UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Regeneron Pharmaceuticals, Inc.,

        Plaintiff,

–v–

Novartis Pharma AG, *et al.*,

        Defendants.

20-cv-5502 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Regeneron Pharmaceuticals, Inc. has filed suit alleging various antitrust violations against Defendants Novartis Pharma AG, Novartis Technology LLC, Novartis Pharmaceuticals Corporation (collectively "Novartis"), and Vetter Pharma International GMBH. The amended complaint alleges Novartis has attempted to monopolize the "anti-VEGF PFS market" through *Walker Process* fraud and other anticompetitive means in violation of the Sherman Act and has tortiously interfered with a contract between Regeneron and Vetter. It further asserts that both Novartis and Vetter unreasonably restrained trade in violation of the Sherman Act. Novartis and Vetter have filed multiple motions to dismiss. They argue that Regeneron's claims are compulsory counterclaims, warranting dismissal or transfer under Federal Rule of Civil Procedure 13(a), or alternatively that a transfer under 28 U.S.C. § 1404(a) or stay of this case is warranted. Defendants also move to dismiss each claim, to the extent it is asserted against them, on the basis that the claims are time-barred and the complaint fails to state a claim under Rule 12(b)(6). The parties have also filed various requests to seal papers before the Court.

1

For the following reasons, the Court determines that transfer is warranted under 28 U.S.C. § 1404(a) and GRANTS Defendants' motions to transfer this action to the Northern District of New York. The Court does not reach the parties' motions to dismiss under Rule 13(a) or 12(b)(6) or motions to seal.

## I. BACKGROUND

### A. Factual Background

Plaintiff Regeneron "is in the business of inventing, developing, manufacturing, and marketing" a variety of pharmaceutical products. Dkt. No. 87, Am. Compl. ¶ 23. Defendant Novartis is one of Regeneron's competitors in developing and marketing anti-VEGF treatments. Anti-VEGF drugs "treat certain eye diseases involving overproduction of a naturally occurring protein in the body called vascular endothelial growth factor." *Id*. ¶ 5. Regeneron markets the anti-VEGF treatment EYELEA, while Novartis markets LUCENTIS and BEOVU. The treatment is injected in a patient's eye and sold either in a vial or a "pre-filled syringe" ("PFS"). *Id*. ¶¶ 5–6. Defendant Vetter is a "filler" company—meaning, for the PFS treatments, it "fill[s] the syringe with the drug in accordance with the required sterile conditions." *Id*. ¶ 7.

Regeneron and Vetter worked together for many years. Vetter was "a long-term filler for EYELEA vials on a non-exclusive basis." *Id*. ¶ 152. And in 2005, the two companies entered an agreement to "collaborate" on the development of EYELEA in PFS form. Unbeknownst to Regeneron, however, Vetter was working with Novartis as well. In 2013, Vetter and Novartis entered a settlement agreement in 2013 regarding ownership of the underlying patent application for U.S. Patent No. 9,220,631 (the '631 Patent). *Id*. ¶¶ 8, 256. The '631 Patent "broadly claim[s] a PFS with any anti-VEGF, including EYELEA." *Id*. ¶ 8. According to Regeneron, the '631 Patent is at "the heart of Defendants' anticompetitive conduct" and a "cornerstone" to the

scheme. *Id*. ¶¶ 95, 238. Central to Regeneron's complaint are allegations that Defendants procured the '631 Patent "through fraud on the USPTO." *Id*.

Regeneron alleges that the '631 Patent dramatically changed the relationship between Regeneron and Vetter. After Vetter entered its settlement agreement with Novartis, the company demanded "onerous" terms for Regeneron to continue using its filler service. *Id*. ¶¶ 166–67, 261. Regeneron was consequently "forced to sever its relationship with Vetter." *Id.* ¶ 261. This resulted in significant financial burdens and delayed EYELEA PFS's entrance into the market. Regeneron contends the anticompetitive scheme continued when Vetter again attempted to force Regeneron into an "anticompetitive" contract and Novartis sued Regeneron for infringing the '631 Patent in 2020. *Id.* ¶¶ 18–19.

### B. Procedural Background

On July 17, 2020, Regeneron filed this suit alleging that Novartis (and Novartis and Vetter together) has attempted to "stop EYELEA through anticompetitive means." Dkt. No. 1, Compl. ¶ 3. A month before this suit, however, Novartis filed two patent infringement suits alleging that Regeneron's EYELEA PFS infringes Novartis's '631 Patent. The first infringement action, *Novartis Pharma AG v. Regeneron Pharms., Inc.*, No. 1:20-cv-00690-TJM-CFH (N.D.N.Y.), was filed on June 19, 2020 in the Northern District of New York and seeks damages and injunctive relief. The second action, *In re Certain Pre-Filled Syringes For Intravitreal Injection & Components Thereof*, USITC Pub. 715158 (July 21, 2020), sought to bar importation of EYELEA PFS and its components before the International Trade Commission. The NDNY action was stayed on July 30, 2020, pending the resolution of the ITC action and pursuant to Regeneron's request under 28 U.S.C. § 1659(a). NDNY Action, Dkt. No. 25. However, on June 11, 2021, that stay was lifted after Novartis dropped its suit before the ITC. *See* Dkt. No. 135 at

3

1; Dkt. No. 136 at 1. The NDNY action is now proceeding—the court entered a pretrial scheduling order on August 24, and Regeneron recently filed its answer and affirmative defenses to Novartis's complaint. *See* NDNY Action, Dkt. Nos. 74, 82.

Regeneron's original complaint filed here asserted three claims for relief. Count One alleged "attempted monopolization through *Walker Process* fraud in violation of Section 2 of the Sherman Act" against Novartis. Compl. ¶¶ 183–97; *see also* Am. Compl. ¶¶ 218–32. Regeneron alleges that the '631 Patent is unenforceable because Novartis "deliberately withheld the existence of [material] prior art from the USPTO." Novartis's enforcement of the "fraudulently procured '631 Patent constitutes anticompetitive conduct." Compl. ¶¶ 184, 194.

Count Two alleged "attempted monopolization in violation of Section 2 of the Sherman Act" against Novartis. Compl. ¶¶ 198–213; *see also* Am. Compl. ¶¶ 233–50. In particular, it alleged that "Novartis embarked on an anticompetitive scheme to maintain, entrench, extend, and ultimately restore its monopoly power in the anti-VEGF PFS market, and the cornerstone of that scheme was Novartis's fraudulently procured '631 Patent." Compl. ¶ 203; *see also* Am. Compl. ¶ 238. The Count reasserted Regeneron's argument that "the '631 Patent is unenforceable because Novartis committed fraud on the USPTO." *Id*.

Finally, Count Three alleged "unreasonable restraint of trade in violation of Section 1 of the Sherman Act" against both Novartis and Vetter. Compl. ¶¶ 214–32; *see also* Am. Compl. ¶¶ 251–75. In particular, Regeneron alleged that "Novartis and Vetter tried to leverage the fraudulently procured and unenforceable '631 Patent to coerce Regeneron into an exclusive arrangement with Vetter so that they could control the supply of all anti-VEGF PFS drugs." Compl. ¶ 222; *see also* Am. Compl. ¶ 261.

On September 4, 2020, Novartis and Vetter moved to dismiss, transfer, or stay the action. *See* Dkt. Nos. 40, 43.[1]  On October 19, 2020, Defendants then moved to dismiss the complaint under Rule 12(b)(6), arguing that the claims were time-barred, or alternatively, that Regeneron failed to state a claim.  *See* Dkt. Nos. 55, 58.  Regeneron opposed both motions.  *See* Dkt. Nos. 45, 66.

After this Court declined to stay discovery pending resolution of the motions to dismiss, *see* Dkt. No. 69, the parties commenced discovery.  Regeneron subsequently amended its complaint on January 25, 2021, *see* Dkt. No. 87, 88, and the Court granted the unopposed motion to seal because the amended complaint contains competitive business information, Dkt. No. 86. The amended complaint added two additional causes of action against Novartis.  Count Four alleges "attempted monopolization through *Walker Process* fraud in violation of Section 2 of the Sherman Act."  *See* Am. Compl. ¶¶ 276–84.  While Count One alleges the '631 Patent is unenforceable due to Novartis's withholding of prior art, this Count alleges that "the '631 Patent is invalid under 35 U.S.C. 102(f) due to Novartis's failure to name all actual inventors."  *Id.* ¶ 277.  In "deliberately omitting" this "material information with an intent to deceive the USPTO about the true inventors of the '631 Patent," Novartis "deprive[d] Regeneron of its contractual ownership rights" and "ensure[d] that they could wield Novartis's fraudulently procured '631 Patent to frustrate and delay Regeneron's entry into the U.S. anti-VEGF PFS market."  *Id.* ¶¶ 278, 281–82.  Finally, Count Five alleges "tortious interference" with a contract between Regeneron and Vetter to develop EYELEA PFS.  *Id.* ¶¶ 285–94.  The motivation for this alleged "tortious interference" was "to fraudulently conceal the Vetter employees' inventorship from the USPTO in order to sabotage Regeneron's ownership rights."  *Id.* ¶ 288.

---

[1] Vetter joined Novartis's motion to dismiss, transfer, or stay in its entirety, rather than filing an independent motion. *See* Dkt. No. 43.

5

Defendants again moved to dismiss the amended complaint as time-barred and for failure to state a claim. *See* Dkt. Nos. 89, 94. Regeneron opposed, and Defendants filed their replies. *See* Dkt. Nos. 105, 114, 117. The Court now considers Defendants' request to transfer this action to the Northern District of New York and GRANTS the request under 28 U.S.C. § 1404(a). It does not reach the remaining motions to dismiss and seal as those motions are more properly addressed by the transferee court. *See, e.g.*, *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017).

**II. ANALYSIS**

Defendants argue that this Court should dismiss or transfer this action to NDNY under Rule 13(a) and the first-to-file rule because Novartis's patent infringement suit was filed a month before the instant action. *See* Dkt. No. 41. Even assuming without deciding that the first-to-file rule does not apply in this case, the Court concludes that transfer to NDNY is warranted under 28 U.S.C. § 1404(a).

A motion to transfer under 28 U.S.C. § 1404(a) involves two inquiries: first, whether the action might have been brought in the proposed transferee court (in this case the Northern District of New York), and second whether transfer is warranted for the convenience of the parties and witnesses, and in the interest of justice. *See* 28 U.S.C. § 1404(a); *Herbert Ltd. P'ship v. Elec. Arts, Inc.,* 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). The party seeking to transfer a case carries the burden of making out a strong case for transfer, and courts evaluate such motions under a clear and convincing evidence standard. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010).

First, NDNY is clearly a district in which this action "might have been brought." 28 U.S.C. § 1404(a). And Regeneron does not contend otherwise. Rather, the parties appropriately

6

focus on whether transfer is warranted under the familiar factors considered with respect to a transfer motion, namely: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the comparative familiarity of each district with the governing law, and (9) judicial economic and the interests of justice. *New York Marine & Gen. Ins. Co.,* 599 F.3d at 112; *Herbert Ltd. P'ship*, 325 F. Supp. 2d at 285–86.

      The most important factor in this case is the consideration of judicial efficiency and the interests of justice. "Courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy; it can be decisive." *Brown v. New York,* 947 F. Supp. 2d 317, 325–26 (E.D.N.Y. 2013) (cleaned up). Looming over this antitrust action is Novartis's patent infringement suit. As outlined above, the enforceability of the '631 Patent runs throughout Plaintiff's amended complaint—indeed, in Plaintiff's own words, it is at the "heart" of Defendants' allegedly anticompetitive scheme. Am. Compl. ¶ 95; *see also id.* ¶ 238 (labeling the '631 Patent the "cornerstone" of the scheme). Plaintiff alleges two factual bases for finding the '631 Patent was "fraudulently procured," and both of these factual disputes will necessarily be determined by the NDNY in adjudicating the enforceability of the patent. Thus, this action "will hinge at least in part on the same facts and issues" as the NDNY litigation. *See McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 AJN, 2014 WL 988607, at *10 (S.D.N.Y. Mar. 12, 2014). And "transfer is particularly appropriate where there is a pending lawsuit in the transferee district involving the same facts,

transactions, or occurrences." *Nieves v. Am. Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988). To do otherwise would risk unnecessarily "duplicative litigation and inconsistent results." *Id.*

Regeneron's arguments that judicial economy militates against transfer largely hinge on the prior stay in the NDNY action—that if transferred, its antitrust claims would "not be litigated until five years from now." Dkt. No. 45 at 25. As noted above, however, the NDNY stay was recently lifted after the ITC action was dismissed. *See* Dkt. No. 135 at 1. Regeneron has now filed its answer to Novartis's complaint and asserted several affirmative defenses, including that the '631 Patent is invalid based on the same factual predicates asserted in the instant suit. *See* NDNY Action, Dkt. No. 74. Regeneron proffers that there is a possibility that the NDNY action is stayed once again, *see* Dkt. No. 136, but it provides no reason to think the stay would be lengthy.

Regeneron's further arguments regarding the interests of justice are unavailing. It argues that the interests of justice would be disserved by transfer because "any delay in litigating Regeneron's antitrust claims would only risk jeopardizing the health and safety" of elderly patients "who rely on EYELEA PFS." Dkt. No. 45 at 27. But Regeneron does not explain how EYELEA PFS will return to the market before the patent infringement suit is adjudicated. Finally, Regeneron argues transfer "would lead to the exactly type of harm that the U.S. antitrust laws were designed to protect." *Id*. But transfer to the NDNY does not dismiss Regeneron's claims, "leaving an [allegedly] significant antitrust violation undetected or unremedied," it simply transfers the task of adjudicating Regeneron's claims to a more appropriate district. *See id.* at 28.

The remaining "convenience" factors do not outweigh this "decisive" factor. *See Brown*, 947 F.Supp.2d at 325–26. First, a plaintiff's choice of forum is entitled to considerable

weight and is generally not disturbed unless the balance of the factors strongly favors transfer. *See Tomjai Enters., Corp. v. Laboratorie Pharmaplus U.S.A., Inc.,* No. 12-cv-3729, 2012 U.S. Dist. LEXIS 107033, at *13–14 (S.D.N.Y. July 29, 2012); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n.,* 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007). But the overlapping litigation strongly favors transfer. Moreover, while Regeneron is headquartered within the SDNY, its complaint does not allege that any of the operative facts of the action occurred here. *See Tomjai Enters.,* 2012 U.S. Dist. LEXIS 107033, at *13–14 (finding a Plaintiff's choice of forum holds diminished weight when the selected forum is not where the operative facts of the action occurred). On the other hand, the complaint expressly pleads that "the next logical step in [Defendants'] conspiracy" occurred in the NDNY—Novartis's patent infringement suit. Am. Compl. ¶ 265; *see Tomjai Enters.,* 2012 U.S. Dist. LEXIS 107033, at *17 ("The locus of operative facts is a primary factor in determining whether to transfer venue.").

As for witness convenience, Regeneron notes that the majority of its witnesses are located in the SDNY, weighing against transfer. *See* Dkt. No. 45 at 28. However, many of the witnesses would have to travel both to the SDNY and to the NDNY due to the overlapping litigation. Witness convenience may be gained by transfer and potential consolidation. Regeneron also argues that the NDNY is outside the "100-mile subpoena range of the two U.S. Novartis Defendants in East Hanover, New Jersey." *Id.* at 30–31. But Regeneron only speculates about the possibility of Novartis witnesses refusing to appear without a subpoena. Party witnesses, and employees of party witnesses, of course typically appear voluntarily. The unavailability of process to compel witness attendance is less weighty when there is only speculation that prospective witnesses would refuse to attend. *See Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 442–43 (E.D.N.Y. 2012). In any event, Novartis Pharma AG is based in

9

Switzerland and Vetter in Illinois. *See* Am. Compl. ¶¶ 24, 27. Novartis's co-developer of LUCENTIS PFS is based in California. Dkt. No. 41 at 28. All would be outside the subpoena range for either district. The Court finds that this factor is neutral.

Considering the factors, the issue of judicial economy and interests of justice outweigh everything else. The Court accordingly finds that Defendants have met their burden to show by clear and convincing evidence that this matter should be transferred to the NDNY pursuant to 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is GRANTED. Regeneron's request for oral argument is denied as moot. In light of Plaintiff's amended complaint, the Court hereby denies as moot Defendants' motions to dismiss the original complaint for failure to state a claim and related oral argument request. The Court does not reach Defendants' motions to dismiss the amended complaint for failure to state a claim nor the parties' various motions to seal. This resolves Dkt. Nos. 40, 43 55, 57, 58, 68.

The Clerk of Court is respectfully directed to transfer this matter to the Northern District of New York.

SO ORDERED.

Dated: September 21, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge